UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN - DIVISION
COVINGTON

FILED

AUG - 7 2009

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 08-119-JBC

PAMELA WILLIAMSON PENICK,                                              PLAINTIFF,

V.                      **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISIONER,
SOCIAL SECURITY ADMINISTRATION,                                        DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits (R. 12, 13). The court will deny the plaintiff's motion and grant the defendant's motion because substantial evidence supports the administrative law judge's opinion.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y*

of *Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case de novo or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. See *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II. The ALJ's Determination

The plaintiff is a fifty-year-old female with past relevant work experience as a data entry operator. AR 21, 48, 1158. She alleges disability beginning on July 19,

2

2004, as a result of a back injury she incurred while lifting a box at work, as well as depression. AR 16, 18, 91. On August 31, 2004, the plaintiff filed an application for Disability Insurance Benefits, which was denied initially on February 4, 2005, and upon reconsideration on May 13, 2005. AR 16. After a hearing held on June 22, 2006, Administrative Law Judge ("ALJ") John M. Lawrence determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 16, 21. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since July 19, 2004, the alleged onset date. AR 18. At Step 2, the ALJ found that the plaintiff had severe impairments of degenerative disease of the lumbosacral spine, chronic obstructive pulmonary disease, a generalized anxiety disorder, and major depression. *Id*. The ALJ then determined that the plaintiff's impairments did not meet or equal a Listing of Impairments at Step 3. *Id*. At Step 4, the ALJ found the plaintiff capable of performing past relevant work as a data entry worker, as such work does not require the performance of activities precluded by the claimant's residual functional capacity ("RFC"). AR 21. The ALJ therefore denied the plaintiff's claims for Disability Insurance Benefits at that step. *Id*. The plaintiff appealed to the Appeals Council, her appeal was denied, and she commenced this action. AR 5, 13; R. 2.

**III. Legal Analysis**

The plaintiff claims that the ALJ's opinion is not supported by substantial evidence for two reasons: (1) the ALJ erred by failing to list an annular tear in the list of the plaintiff's severe medical impairments; and (2) the ALJ erred when he found that the opinion of a consulting physician, John Kelly, M.D., regarding the plaintiff's physical limitations was inconsistent with Dr. Kelly's conclusion that the plaintiff exhibited symptom magnification. The court will consider these arguments in turn.

The ALJ did not err by failing to list an annular tear as one of the plaintiff's severe medical impairments. The plaintiff argues that the ALJ erred both in determining that the plaintiff's MRI report did not show an annular tear and in omitting such a tear from the list of her severe medical impairments. Specifically, the plaintiff asserts that the conclusion that there was no annular tear "flies in the face of clear facts," as the ALJ's determination directly contradicted the opinion of Dr. Kelly. R. 12, at 4. However, the record contains conflicting medical evidence regarding the possibility of an annular tear.

Although Dr. Kelly and Malcolm Meyn, M.D., another consulting physician, found that the discogram showed "at least an annular tear," AR 494 (Meyn); AR 506 (Kelly), those findings may be inconsistent with a treating physician's opinion. Thad Jackson, M.D., a neurosurgeon who treated the plaintiff for her back pain, determined that the discogram "demonstrate[s] degenerative disc at L5-S1 with

4

contrast extravasation into the interior epidural space with 10/10 at this level." Dr. Jackson never mentioned an annular tear in his medical records concerning the plaintiff.

Because the opinions of both Dr. Kelly and Dr. Meyn are merely consultative, they are not entitled to the same deference that would be due to the opinions of a treating physician. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Generally, greater weight is given to opinions from treating sources because they can provide a better image of the patient's injuries over a longer period of time. 20 C.F.R. § 404.1527 (d)(2). A one-time, consultative opinion is entitled to less weight than an opinion of a physician who has treated the plaintiff over a period of time. *See Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983). Even though Dr. Kelly and Dr. Meyn determined that the plaintiff had an annular tear, substantial evidence exists in the medical record, namely Dr. Jackson's letter to Gary Melton, M.D., AR 571, which suggests otherwise. Therefore, the ALJ had no duty to give deference to the consulting physicians' opinions.

While the ALJ concluded that the plaintiff was not suffering from an annular tear, he still found that the plaintiff had other severe impairments, including degenerative disc disease of the lumbosacral spine, chronic obstructive pulmonary disease, a generalized anxiety disorder, and major depression. AR 18, 20. Even if

5

the ALJ's failure to include the annular tear in the list of severe impairments was erroneous, it does not constitute reversible error because the ALJ proceeded with the five-step sequential analysis and made a residual functional capacity (RFC) determination. *See Mariarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ then determined that the plaintiff was capable of performing past relevant work as a data entry worker. AR 21. This assessment of the plaintiff's injuries was based on substantial evidence; therefore, the court will not disturb it.

The ALJ also did not err in his determination that Dr. Kelly's acknowledgment that the plaintiff exhibited signs of symptom magnification was inconsistent with Dr. Kelly's assessment of the plaintiff's physical limitations. Like other physicians, Dr. Kelly recognized the plaintiff's symptom magnification. AR 506. While he clarified that the plaintiff does have a "clear and objective injury," Dr. Kelly's opinion regarding the limitations that the injuries placed on the plaintiff failed to consider adequately her "low pain tolerance, and/or symptom magnification." *Id.*

Not only was Dr. Kelly's assessment inconsistent with his own findings, but it was contrary to the opinions of other consulting physicians as well. Dr. Kelly opined that the following restrictions applied to the plaintiff: no lifting greater than ten pounds, no bending or stooping, no standing or walking greater than ten

6

minutes per hour or more than one hour per day. AR 508. In contrast, Dr. Jackson imposed only the following restrictions: no lifting, no walking on an incline, standing as tolerated, and, while lying down, her legs should be elevated. AR 487. In addition, the state-agency physicians reviewed the record and concluded that the plaintiff could perform "medium exertional work." AR 20, 123-24, 165-66. Therefore, substantial evidence exists in the record to support the ALJ's decision to reject Dr. Kelly's opinion regarding the degree of the plaintiff's limitations.

The ALJ properly discounted Dr. Kelly's opinion because of his inadequate consideration of the plaintiff's symptom magnification. While "tolerance of pain is a highly individual matter," the weight given to such an assessment of pain tolerance in determining disability "depends largely on the credibility of the claimant." *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Although the ALJ may not ignore the plaintiff's subjective complaints, his findings with respect to credibility are entitled to great deference. *Id.*

The ALJ concluded that the plaintiff's "statements concerning the intensity, persistence and limiting effects of her symptoms [were] not credible" and her claims were exaggerated. AR 19. Dr. Kelly and Dr. Best indicated that the plaintiff's findings were suggestive of symptom magnification. AR 495, 506-07. Also, Paul Ebben, Psy.D., a consulting psychologist, examined the plaintiff in November 2004 and determined that she was a questionable informant and that she showed "significant signs of exaggeration or malingering" during her mental

7

exam. AR 91. He noted that the plaintiff "did present in severe distress, and at least moderate pain, but her performance on the mental status examination was not considered reliable and valid, as there is evidence that she was exaggerating problems." AR 98. Because the ALJ's decision regarding the plaintiff's exaggeration of her pain and symptoms was based on substantial evidence in the record, the court must give deference to it and will deny the plaintiff's request to reverse the ALJ's decision or remand the matter for a new hearing.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (R. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (R. 12) is **DENIED**.

Signed on August 7, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY